IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES E. FUQUA, SR.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION 07-0804-WS-C |
| | ) |
| **HORACE BELL, JR., et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion to remand, (Doc. 10), which was triggered by the Court's sua sponte questioning of its subject matter jurisdiction. (Doc. 5). The parties have filed briefs and/or evidentiary materials in support of their respective positions, (Docs. 6, 9, 13), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion to remand is due to be denied.

The lawsuit arises out of a motor vehicle accident that occurred in November 2005. The complaint alleges damages in the form of vehicle damage, pain and suffering, mental anguish, and medical expenses, all both past and future. The complaint seeks an award of compensatory damages in excess of the $10,000 jurisdictional minimum of the state court.

"[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because the plaintiff has made an unspecified demand for damages, the *Tapscott* standard applies here. Under *Tapscott,* a defendant must show that, if the plaintiff prevails on

liability, he will more likely than not be awarded over $75,000.[1]

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). As their evidence, the defendants rely on an October 2007 letter to plaintiff's counsel from Regina Gilliland, a medical doctor specializing in physical medicine and rehabilitation. Dr. Gilliland's letter, which is the only evidence of damages offered by either side, reflects the following pertinent points:

- The plaintiff has been in constant, significant pain since the date of the accident;
- The plaintiff underwent physical therapy in December 2005;
- Before seeing Dr. Gilliland, the plaintiff had received multiple blocks;
- As of his first office visit, in January 2007, the plaintiff was taking Lortab 5 mg twice a day and daily doses of Ibuprofen, as well as Zanaflex (a muscle relaxant);
- The plaintiff had at least four office visits with Dr. Gilliland between January and September 2007, plus two office visits to receive injections;

---

[1] *E.g., Hitch v. Laws*, 2000 WL 1005888 at *2 (S.D. Ala. 2000)("Defendants can discharge the burden 'by presenting sufficient evidence that a verdict rendered in favor of [plaintiffs] would exceed $75,000.'")(quoting *Holman v. Montage Group*, 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999); *accord Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388, 1393 (M.D. Ala. 1998)("In a diversity action where the plaintiff has not made a specific request for damages, the ultimate question the court addresses is whether a defendant has established by a preponderance of the evidence that should the plaintiff prevail on a particular claim, the plaintiff, more likely than not, will recover in excess of the federal jurisdictional prerequisite.").

- The plaintiff underwent an EMG in January 2007;
- The plaintiff received a round of Myoblock injections (a type of Botox) three times between January and September 2007;
- At various points during the year, Dr. Gilliland prescribed Lortab, Tylox, and Lyrica for pain;
- Dr. Gilliland encouraged the plaintiff to return to physical therapy in January 2007, but he apparently did not do so;
- Dr. Gilliland opined that the plaintiff's pain "will be long-term and chronic";
- Dr. Gilliland opined that the plaintiff will need to be seen by a physician at least four to six times a year for pain management;
- Dr. Gilliland opined that the plaintiff will require ongoing Botox injections at a cost of $1,200 to $1,500 per episode;
- Dr. Gilliland opined that the plaintiff will likely need periodic physical therapy intervention at a cost of $1,500 to $2,500 per session;
- Dr. Gilliland opined that the plaintiff will need to be retained on his pain medications;
- Dr. Gilliland opined that all of the plaintiff's future medical treatment will be needed on a "long-term" basis.

The plaintiff's protestations to the contrary notwithstanding, Dr. Gilliland's letter is unusually informative about the plaintiff's damages.

With respect to past medical expenses, even before first seeing Dr. Gilliland, the plaintiff had undergone both physical therapy and blocks which, given her pricing, probably cost between $4,000 and $7,000. Under Dr. Gilliland, the plaintiff underwent three episodes of Botox injections, at a cost between $3,600 and $4,500. The plaintiff has had an EMG, the cost of which was necessarily significant. The plaintiff has had at least four office visits with Dr. Gilliland and (given his pre-existing history of prescription

medications and blocks) multiple office visits with one or more previous doctors, the cost of which is necessarily significant, especially in total.  Finally, the plaintiff has been on multiple prescription medications for extended periods.  The Court concludes that, based on Dr. Gilliland's letter, it is more likely than not that an award of past medical expenses would fall between $10,000 and $15,000.

With respect to future medical expenses, three Botox injections a year (as in 2007) will cost $3,600 to $4,500 annually, and one physical therapy session (as Dr. Gilliland recommended) will cost $1,500 to $2,500 annually.  Four to six office visits a year could easily cost $1,000, and pain medications would be an additional significant amount.  The Court concludes that, based on Dr. Gilliland's letter, it is more likely than not that an award of future medical expenses would fall between $7,000 and $10,000 per year.

The plaintiff complains that there is no evidence of how long future medical expenses would be required.  (Doc. 10 at 4).  Dr. Gilliland, however, asserted that the plaintiff's pain is "chronic" and that the treatment for it will be "long-term."  The Court concludes that, based on Dr. Gilliland's letter, it is more likely than not that an award of future medical expenses would extend at least ten years.[2]

The preponderance of the evidence, therefore, makes it more likely than not that the amount in controversy, just in terms of past and future medical expenses, exceeds $75,000.  Moreover, the degree of medical treatment for pain that the plaintiff has received, and will receive in the future, makes it probable that the plaintiff, if successful in establishing liability, would be awarded a significant amount representing past and future pain and suffering.

For the reasons set forth above, the plaintiff's motion to remand is **denied**.

---

[2]The plaintiff's age is not given in the complaint or in Dr. Gilliland's letter.  However, those documents do reflect that the plaintiff was employed and was driving a motor vehicle on a federal highway at the time of the accident, which fully supports the proposition that his remaining life expectancy exceeds ten years.

DONE and ORDERED this 10th day of December, 2007.

                                                  s/ WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE